[No. 13899. *En Banc.* April 15, 1918.]

AMBROSE FRED COLVIN *et al., Respondents,* v. DELBERT CLARK, *Appellant.*[1]

LOGS AND LOGGING—CONTRACT—CONSTRUCTION. Where the purchaser of timber agreed to remove and pay for it within five years, the contract providing for monthly payments according to mill scale as it was cut, the contract gave him five years for the removal of the timber, and he was not in default so long as the stipulated payments were made.

SAME—CONTRACT—PERFORMANCE. Where the seller of timber failed on demand to furnish a right of way as agreed, required for the removal of one million feet of the timber, the buyer was entitled to a deduction therefor from the agreed price for all the timber.

APPEAL—REVERSAL—EXTENSION OF TIME. Where the lower court erroneously cancelled a contract for the sale of timber before the expiration of the five years limited for its removal, upon reversal the appellant will be given an extension of time for performance amounting to the difference between the date of the judgment and the date of the expiration of the contract.

Appeal from a judgment of the superior court for Thurston county, D. F. Wright, J., entered August 14, 1916, upon the verdict of a jury rendered in favor of the plaintiffs, after a trial on the merits. Reversed.

[1]Reported in 172 Pac. 214.

*Davis & Neal,* for appellant.

*Thomas M. Vance* and *Chas. D. King,* for respondents.

MOUNT, J.—This appeal is prosecuted by the defendant from a judgment of the lower court in favor of the plaintiff for $3,369 and also a decree canceling and setting aside a contract entered into between the parties.

The facts are as follows: In April, 1912, the parties to this action entered into a contract as follows:

"This agreement made and entered into this 25th day of April, 1912, by and between Ambrose Fred Colvin, owner of the life estate and the real property hereinafter described, and Anna Colvin, his wife, and Tom Ismay, the duly appointed, qualified and acting guardian of the minor children of the said Ambrose Fred Colvin and Anna Colvin, parties of the first part, and Delbert Clark, party of the second part,

"Witnesseth, that in consideration of the covenants and agreements herein contained and the payments made and agreed to be made as hereinafter specified, the said parties of the first part, subject to the requirements and orders of the superior court of the state of Washington for Thurston county, the parties of the first part hereby sell and convey to the party of the second part, his heirs and assigns, upon the terms and conditions hereinafter specified, all the merchantable fir timber situated and being on the east half of the northeast quarter of section thirty-four and the south half of the northwest quarter and the northwest quarter of the southeast quarter of section thirty-five; also all the fir timber in sections twenty-five and twenty-six; also all the fir timber on the northwest quarter of the southeast quarter of section thirty-five, all in township sixteen, north, of range two, west of W. M.

"Said party of the second part agrees to pay for the said timber the sum of two dollars per thousand feet in the manner hereinafter provided.

"It is agreed that the amount of timber on said land

is 10,825,000 feet, said timber shall be paid for by the party of the second part as the same shall be cut and logged, the mill scale shall be taken for the purpose of determining approximately the amount of timber logged each month, but the amount of timber to be taken and paid for is agreed to be 10,825,000 feet, as aforesaid. All timber logged each month shall be settled and paid for by the party of the second part on the 15th day of the following month until said timber is fully paid for. The party of the second part, his successors and assigns, agree to take and remove said timber and pay for the same as above set forth within five years from the date of this contract.

"In consideration of the above obligations, the orders of the court and other good and sufficient consideration, the said parties of the first part hereby grant to the party of the second part, his successors and assigns, a right of way for the steam logging railroad or wagon road, or both, 50 feet in width, over and across sections 25, 26, 34 and 35, township 16, north, range 2, west W. M., in Thurston county, Wash., commencing on the east line of the northeast quarter of the northeast quarter of said section 25, running thence in a westerly and southwesterly direction, same to cross Scatter Creek at a point not less than 1,000 feet west of the present barn building now situated on the Ignatius Colvin D. L. C., with the right to build all necessary roads for the removal of any timber that might be required by said second party, their successors and assigns, but no cultivated lands shall be crossed by said right of way except at that point where Scatter Creek is crossed.

"The party of the second part, his successors or assigns, will pay for the use and occupancy of said right of way the sum of $25 per month, beginning as of the date of the execution of this instrument. Said payments shall be made to said Ambrose Colvin during his lifetime if he shall live during the term of this contract, and in case of his death before the expiration of this contract, then to duly appointed representatives of said minors. The term for which said right of way is hereby granted shall be for a period of not less than

five years, or longer at the option of the party of the second part, his successors or assigns.

"The party of the second part, his successors or assigns will put in and maintain sufficient cattle guards wherever said right of way crosses fences, wherever same are now or may hereafter be built. And the party of the second part will pay for all stock or animals that may be killed or injured by the use of said right of way or as the result of any negligent act of the said second party, and will also put in suitable crossings wherever a road used for wagons crosses said right of way. It is further expressly covenanted and agreed that said first parties, their heirs, successors and assigns, shall not lease, sell or convey or grant any right of way for logging purposes, to any person, company, corporation, over and across said sections 25, 26, 34 and 35, T. and R. aforesaid, for the period of the life of this contract. The sum of two thousand dollars shall be deposited by the party of the second part in the Capital National Bank of Olympia, to the credit of the guardian of the minor children of Ambrose Fred Colvin and Anna Colvin, upon the execution of this contract, and said two thousand dollars, cash, shall be credited to the party of the second part on the last one million feet of timber cut.

"And it is also agreed as a part of the consideration for entering into this contract and for the making of such conveyance and for the sale of such timber, that the second party shall cause to be burned, as provided by law, all slashings on logged off land logged by second party, having due regard for the destruction or damage to this property by fire and of the intention to burn such slashings. The party of the second part shall give to the parties of the first part notice when such slashings are to be burned. And it is further agreed that any damage done by the second party, such as the breaking of fences or the falling of trees in cultivated land, shall be repaired by the second party to the satisfaction of the first party.

"Party of the second part in submitting his monthly scale of timber sawed into lumber shall segregate from timber sawed into lumber that part that is now fallen.

"It is agreed that the parties of the first part shall secure a right of way for the removal of all timber on the northwest quarter of the southeast quarter of section 35, said township and range, and in the event of their failure so to do the party of the second part shall be under no obligations to take said timber on this particular forty-acre tract.

"In witness whereof we have hereunto set our hands this 25th day of April, 1912. . . . ."

After this contract was entered into, the appellant proceeded to cut and log the timber therein described. A scale of the logs was kept at the mill, and on the 15th of the following month checks were forwarded to the respondents for the amount of logs cut, until the appellant had paid to the respondents $12,319.55. In the summer of 1913, after the appellant had substantially finished cutting the logs upon what was called the north side of the tract mentioned in the contract, an action was brought by the respondents to cancel the contract and for a money judgment for the difference between the amount of logs cut upon the north side and the amount of timber which was cruised upon that side. That action resulted in a judgment refusing to cancel the contract, but permitting a recovery of $3,-262.30 against the appellant. This appellant in that case appealed to this court and the judgment was reversed because the court did not make findings of fact. *Colvin v. Clark,* 83 Wash. 376, 145 Pac. 419. That case is still pending.

Thereafter, in July, 1916, this action was brought, the respondents alleging that the appellant had failed to make a proper accounting for the timber or make proper payments for the timber accounted for, and that no proper mill scale had been kept as required by the contract. The respondents further alleged that the appellant had abandoned the contract but was threatening to go upon the premises and take timber there-

from; and the respondents prayed for a judgment in the sum of $3,369, and that the contract be rescinded and the appellant restrained from entering upon the land or cutting any more timber  The appellant, in answer to the complaint, admitted the making of the contract, denied that he had abandoned the cutting of timber or that he had refused to account for all the timber, and denied that he had failed to keep a proper mill scale; and alleged as an affirmative defense that, under the contract it was the duty of the respondents to procure a right of way across the southeast quarter of section 35; that he had demanded such right of way; that the respondents refused to furnish it, and for that reason he was not required to pay for the timber upon that quarter section of land. Upon these issues the case was tried to the jury, and a judgment resulted as first above stated.

It is contended by the appellant that the court erred in denying motions to make the complaint more definite and certain and to strike certain portions thereof. It is unnecessary at this time to enter into a discussion of these points, because we are of the opinion that a construction of the contract itself, which we think is plain, determines the controversy between these parties. It will be noticed that the contract provides as follows:

"Said party of the second part agrees to pay for the said timber the sum of two dollars per thousand feet in the manner hereinafter provided.

"It is agreed that the amount of timber on said land is 10,825,000 feet, said timber shall be paid for by the party of the second part as the same shall be cut and logged, the mill scale shall be taken for the purpose of determining approximately the amount of timber logged each month, but the amount of timber to be taken and paid for is agreed to be 10,825,000 feet, as aforesaid. All timber logged each month shall be settled

and paid for by the party of the second part on the 15th day of the following month until said timber is fully paid for. The party of the second part, his successors and assigns, agree to take and remove said timber and pay for the same as above set forth within five years from the date of this contract."

There can be no doubt that it was agreed here between the parties to this action that the amount of timber on the tracts mentioned was 10,825,000 feet. This timber was to be removed within five years from the date of the contract. The contract provided the method and time of payment, namely, "as the same shall be cut and logged." It provided that—

"the mill scale shall be taken for the purpose of determining approximately the amount of timber logged each month, . . ."

It is plain from these provisions that the appellant had five years in which to remove the timber. He was to pay for it as it was removed. A scale was to be made and each month, as the timber was cut, it was to be scaled at the mill, and on the 15th of the following month was to be paid for, until 10,825,000 feet was fully paid for. The evidence in the case shows that, before the contract was entered into, various cruises had been made of the standing timber. It was estimated that there was more than 10,825,000 feet, but the parties finally agreed upon that amount, which was to be taken and paid for. It is clear that the appellant could take this timber from the land at any time within the five years, because no other time was specified. It is also clear that he was required to pay for the timber at two dollars per thousand feet—whether he took it or not—at the end of the five-year period, except in one instance, where if a right of way was not furnished the amount of timber upon that quarter sec-

tion should be deducted; but otherwise the appellant was required to pay for the 10,825,000 feet.

Some contention is made by the appellant that there was a mutual mistake between the parties as to the amount of timber. There is nothing in this record which would justify this contention. The record is conclusive to the effect that there was a difference of opinion between the scalers who had scaled the standing timber for the parties as to the amount of timber before the contract was entered into; but the parties themselves, after this difference of opinion, agreed that there was 10,825,000 feet, and after that agreement was entered into the parties cannot now be heard to say that there was a mutual mistake.

We also think it is plain from the contract that the appellant was to pay for the timber each month as it was taken off. He was to keep a mill scale which was for the purpose of determining approximately the amount of timber taken. He was required to make payments according to that scale. It is not disputed in this record that he made those payments and that he kept an accurate mill scale. The evidence is conclusive upon that point. The only ground alleged in the complaint for terminating the contract was that the appellant had failed to keep an accurate mill scale of the timber and had failed to pay therefor; but there is no evidence in the record to sustain that allegation of the complaint. In fact, the evidence on the part of the appellant is undisputed to the effect that an accurate mill scale was kept and that payments were made promptly on the 15th of the following month for all the timber taken according to that scale; so that it is apparent that the respondents were not entitled to have the contract canceled or to receive pay for the timber before the expiration of the five-year period.

We are of the opinion, therefore, that the trial court erred in entering the judgment in favor of the respondents and against the appellant, and in canceling the contract before the expiration of the five-year period. The action was brought, as we have seen, a year before the expiration of the time in which the appellant had to remove the timber and to pay therefor. If, as we have seen, the appellant kept an accurate account of the mill scale and paid therefor at the contract price, he was not in default upon his contract, and the lower court was therefore without authority to render any judgment, especially one cancelling the contract.

But it is said by the respondents in their brief that the appellant had abandoned the contract. We find no evidence in the record to sustain this contention. It is true the appellant testified that, upon the north side, there was some timber which he did not intend to take away. It is true the appellant testified that there was more than a million feet upon what is called the south side which he did intend to take away, but that he had made demand for a right of way as provided in the contract, and that the right of way had not been furnished. It is true this demand was made after this action was begun, and the trial court was of the opinion that it was not made in good faith. But if the appellant had complied with his contract—and we think the evidence shows he had, up to that time—he was entitled to demand the right of way and have it furnished according to the terms of the contract; and if it was not furnished he was entitled to deduct the million feet or more from the ten million feet which he had agreed to purchase.

It appears that now the five-year period has elapsed; but after the judgment was entered in this action the contract was canceled by the lower court, and it is plain that, after that time the appellant was bound by that

judgment until it was reversed, and he had no right to go upon the land to take more timber therefrom. In view of this fact, and in view of the fact that the judgment of the trial court must be reversed for the reasons above stated, it is but just that the appellant should have an extension of time in which to fully perform his contract, which would be the difference between the date of the judgment in this case and the date of the expiration of the contract.

The judgment of the trial court is reversed, and the cause remanded with directions to the lower court to deny the relief prayed for by the respondents, but to grant to the appellant an extension of time within which to complete his contract equal to the time between the date of the decree and the date of the expiration of the contract.

ELLIS, C. J., PARKER, FULLERTON, MAIN, WEBSTER, and HOLCOMB, JJ., concur.