Guy James Mangado, J.
In this negligence action the jury has returned a verdict in favor of the defendant, and the court has been asked by the plaintiff to set aside that determination and grant a new trial. Before discussing the basis of this post-trial motion, the evidence at the trial should be briefly outlined.
On June 9, 1963, plaintiff registered as a guest at the Hilton Hotel in London, England. That night, upon returning to Ms *842 room, he took a hath. The following night he followed the same procedure. On the third day of his visit, however, he came back to his room late and decided to go to bed immediately. The next morning, June 12, when he arose, he took a shower. While soaping himself he slipped in the bathtub, fell and sustained serious injuries.[1]
At the trial plaintiff sought to charge the defendant[2] with liability on three separate bases: (1) Failing to provide a rubber shower mat even after it had been specifically requested; (2) failing to install grab bars on the wall immediately adjacent to the overhead shower, and (3) not constructing the base of the tub so as to minimize the risk of a person losing his footing. Hilton Limited’s position was that it had acted properly in providing all necessary safety devices and that in any case it was plaintiff’s own carelessness that was the true cause of the accident. Evidence was offered by the plaintiff to establish each of his theories of liability, while Hilton countered with expert evidence tending to support its position that it had done all that reasonable care required. It may fairly be said that the evidence presented an issue of fact which was for the jury to resolve and which it has — in defendant’s favor.
The motion to set aside the judgment entered upon the jury’s verdict is based upon two grounds. The first is that the court failed to charge properly the relevant provisions of English law, particularly the Occupiers’ Liability Act of 1957 (5 and 6 Eliz. 2, ch. 31), and the second is that certain photographic evidence was improperly excluded.
The latter point requires only brief comment and therefore will be dealt with first. The defendant called as a witness one Del Como, who on direct testified as to the safety practices of the hotel and the hotel industry in England generally. On cross-examination of the witness plaintiff’s counsel sought to introduce photographs showing that grab bars had been installed in the bathtub. It is conceded that these photographs were taken and represent a circumstance which existed only after the accident. Under settled law, the photographs were inadmissible, as they constitute evidence of subsequent repairs (Richardson, Evidence [3d ed., Prince], § 173). Seeking to *843 avoid this exclusionary rule, the moving papers claim that the witness opened the door to this line of inquiry. How this is so is not explained and a reading of the court record shows no statement by the witness concerning safety procedures at the time of the accident which can fairly be said to require contradiction by this type of evidence.
Alternatively, plaintiff’s counsel argued that the photographic evidence was admissible to show how the bathtub might easily have been constructed with this added safety precaution. Had such evidence been offered as part of the plaintiff’s principal case and in a manner that would have left the jury unaware that changes had in fact been made in the hotel after the accident, the court’s ruling would have been otherwise. Instead, the evidence was offered in a manner calculated to bring to the jury’s attention the subsequent repairs. This would have unfairly prejudiced the defendant, making hindsight rather than foresight the test of liability.
We turn then to the first point raised here, the contention that the court’s charge on the Occupiers’ Liability Act of 1957 was inadequate. In the charge the court made no explicit reference to the statute’s provisions. The charge contained a general statement of the responsibilities of an innkeeper. From the charge as a whole the jury was informed that the failure of the defendant to provide mats, to install grab bars, or to construct the base of the tub differently, might be held by the jury to constitute negligence. The court felt then and after further research is .still of the opinion that no difference is to be found in the duty of an innkeeper under English law than under the common law of New York (21 Halsbury, Laws of England [3d ed.] Inns and Innkeepers, pp. 450-51; 27 N. Y. Jur., Hotels, Restaurants, and Motels, §§ 53, 58). The duty is the same in both jurisdictions — the exercise of reasonable care.
The Occupiers’ Liability Act has no special relevance here, and no specific reference to the statute was required. The law states in subdivision 2 (par. [1]) that an “ occupier of premises owes the same duty, the [1] common duty of care ’ to all his visitors, except insofar as he is free to and does extend, restrict, modify or exclude his duty to any visitor or visitors by agreement or otherwise.” The next subdivision then goes on to define the term “ common duty of care ” in language not only familiar to us but to be found in every jurisdiction in the Hnited States. It is “ a duty to take such care as in all the circumstances of the case is reasonable to see that the visitor will be reasonably safe in using the premises for the purposes for which he is invited or permitted by the occupier to be there.” It does *844 not require much insight to see that the principal purpose of the law was to eliminate the common law invitee-license distinction, and the statute explicitly so provides (§ 1, subd. [2]). An innkeeper’s duty was not materially affected by this statute.
Since the court’s charge did treat the defendant as owing the degree of care required by common law to an invitee, plaintiff’s claim that the Occupiers’ Liability Act increased the defendant’s responsibility is without merit. Consequently, the moving papers do not establish any basis for the granting of the relief requested. Nevertheless, this discussion cannot terminate here.
During the course of the court’s research on the Occupiers’ Liability Act, the court became aware of an issue not raised by plaintiff’s counsel. It is that contributory negligence is not a defense to this action under English law. That country has adopted a comparative negligence statute which reduces a plaintiff’s damages to the extent that plaintiff can be said to be responsible for his own injuries. The statute — entitled the Law Reform (Contributory Negligence) Act (8 and 9 Geo. VI., ch. 28) —became law in 1945, and provides in pertinent part (§ 1) as follows: “ (I) Where any person suffers damage as the result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the court thinks just and equitable having regard to the claimant’s share in the responsibility for the damage.’’
Here the jury was charged in accordance with established New York law, that any negligence on the part of the plaintiff contributing to the accident required a verdict for the defendant. Three questions are thus raised: (1) Assuming that the English statute applies, was the failure to charge the provisions of that statute prejudicial? (2) If the answer to the first question is affirmative, then is the English law the proper controlling rule ? (S) Again, if the answer to the latter question be in the affirmative, does plaintiff’s failure to bring the matter to the court’s attention preclude relief?
Reviewing the record as a whole, it cannot be gainsaid that the issue of contributory fault was important. It may well have been the decisive consideration in the jury’s deliberations. This is so despite the fact that the court charged the jury that momentary forgetfulness by the plaintiff of the risk of slipping did not require a finding of contributory negligence. The defendant strenuously argued to the jury — and now in opposi *845 tion to the present motion again urges — that the plaintiff, by proceeding to shower without the mat he claims he asked for, was guilty of contributory negligence as a matter of law. In light of plaintiff’s fairly substantial evidence of negligence, it is reasonable to assume that this argument of the defendant carried much if not conclusive weight with the jury. There is, therefore, a strong probability that had England’s comparative negligence doctrine been applied, the jury would have returned a verdict in plaintiff’s favor — albeit in an amount reduced by the jury’s assessment of the respective responsibilities of the plaintiff and the defendant for the accident.
As the use of New York’s contributory negligence rule rather than England’s comparative negligence law was in all likelihood the determining factor, it must be decided which rule properly applies here. Fitzpatrick v. International Ry. Co. (252 N. Y. 127) seems clearly in point. There the accident occurred in Ontario, which also had a form of comparative negligence statute. Finding that Ontario’s law did not merely provide for a different procedure, but altered substantive law, Judge Cardozo, writing for the Court of Appeals, held according to then prevailing conflict of laws principles, that the place of the wrong would supply the controlling rule and, accordingly, Ontario’s law would apply.
Starting with Chief Judge Ftjld’s 1963 opinion in Babcock v. Jackson (12 N Y 2d 473), however, our Court of Appeals has turned its back on the lex loci delicti rule (and, incidentally, the substance-procedure distinction of the First Restatement) for solving conflict of laws problems in the area of torts. (See, also, Dym v. Gordon, 16 N Y 2d 120; Macey v. Rozbicki, 18 N Y 2d 289, 292 [concurring opn.]; Miller v. Miller, 22 N Y 2d 12; Tooker v. Lopez, 24 N Y 2d 569.) In searching for new tools for resolving conflict problems, the court has now adopted an interest analysis, as Judge Keating’s recent opinion in Tooker v. Lopez (supra) makes demonstrably clear. The approach has proven most fruitful since it has produced results more in accord with today’s concepts of fairness and justice. The question then is whether the Court of Appeals’ recent departure from the lex loci delicti rule leaves the result reached in the Fitzpatrick v. International Ry. Co. (supra) case unimpaired.
Guidance in resolving this question is to be found in the Tooker opinion. Although rejecting the particular analysis and the result reached in the Dym case, Judge Keating quoted with approval Judge Burke’s language as to how conflict of laws questions should be approached: “ ‘ [I]t is necessary first to isolate the issue, next to identify the policies embraced in the *846 laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a * * * superior interest in having its policy or law applied.’ (16 N Y 2d at 124.) ” (24 N Y 2d, supra, p. 574.)
Following this mode of analysis, we search first for the policies reflected in New York’s contributory negligence rule and then for those considerations which led England to adopt its comparative negligence statute. Finding the policies underlying New York’s rule is not an easy task at all, since the rule was judicially developed in the early nineteenth century, and the opinions are hardly revealing.
As Dean Prosser notes, various factors explain the development of the doctrine of contributory negligence: 11 Its development was at least encouraged, if not entirely explained, by three factors. Chief among these was the uneasy distrust of the plaintiff-minded jury which grew upon the courts in the earlier part of the nineteenth century, and a desire to keep the liabilities of growing industry within some bounds. Another was the tendency of the courts of the day to look for some single, principal, dominant, proximate cause of every injury. The third was the inability of the courts, apart from admiralty cases where there was no jury, to conceive of a satisfactory method by which the damages for a single, indivisible injury could be apportioned between the parties, so that, although both were at fault, the loss must fall entirely upon the negligent plaintiff or upon the negligent defendant.” (Prosser, Torts [3d ed.], p. 428; see, also, Malone, The Formative Era of Contributory Negligence, 41 Ill. L. Rev. 151.)
Each of these factors, however, is an “ antique heritage of an older day.” In almost every area of New York tort law these considerations are now given little or no weight. The social milieu in which the old rule arose is no longer with us. Courts now do not feel any need to act as a protector of our nation’s infant industries, for their infancy has long since passed and the view of contemporary law as seen in decision after decision is that a tortious defendant should be required to pay full and adequate compensation. (Bernadine v. City of New York, 294 N. Y. 361; Bing v. Thunig, 2 N Y 2d 656; Greenberg v. Lorenz, 9 N Y 2d 195; Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432; Millington v. Southeastern Elevator Co., 22 N Y 2d 498.) In an age where a defendant may through various means, such as insurance, readily protect himself from a ruinous judgment, the solicitude of nineteenth century courts for defendants is certainly out of place in a twentieth century New York Court.
*847 Assuredly, New York’s rule is not intended to punish the plaintiff for his carelessness. If it were, we would not have such a doctrine as “last clear chance.” For similar reasons, the contention that New York’s common-law rule was designed to deter carelessness on the part of the plaintiff is unsupp or table. It would seem that none of the policies which lead to New York’s contributory negligence has any validity at the present time. The most that can be said is that the rule now has the practical effect of keeping insurance costs lower than presumably they would be under a comparative negligence regime. Even this, however, is a highly debatable proposition. The rule also protects defendants who neglect to purchase sufficient insurance or perhaps are unable to obtain adequate amounts.
England’s rejection of the all or nothing approach of the common-law rule reflects a view that a person who is principally responsible for injuries to another should not escape liability completely because the injured party was also in part at fault. The argument that the common-law rule deters carelessness on the part of the plaintiff is rejected as being highly unrealistic. If fear for one’s own life or health will not induce a decent regard for one’s own safety, then the prospect of not recovering damages surely will not. If, indeed, the regulation of conduct is one of the functions of the contributory negligence rule — and this is extremely doubtful- — -then the common-law rule ran the wrong way. There is more psychological reality to the proposition that the threat of liability may influence persons to consider possible risks to others before embarldng on a dangerous course of conduct. In any event, the common-law rule gave too much weight to deterring carelessness on the part of a plaintiff while removing all incentive to care on the part of a defendant. England’s rule achieves a better balance. There is no doubt that the principal motive for change in the law in England is the harsh lack of proportion and the immorality ■ in a rule which denies an injured person all compensation although his responsibility for the accident and for the resulting injuries may be minor.
Having listed the possible reasons supporting each of the contending rules, we take the next step and seek to determine whether either or both jurisdictions have any interest in the application of its domestic rule to the facts of this case, and if both are found to have some interest, then which jurisdiction has the paramount interest?
As we have already noted, the contributory negligence rule was principally meant to be a device to limit the liability exposure of a defendant. Since the defendant here is not a New *848 York resident, New York would have no interest in seeing its liability-limiting doctrine applied in favor of a nonresident. If anything, New York might well be interested in seeing the application of English law. Were the plaintiff permanently disabled he might well become a burden on New York’s public and private facilities if his contributory negligence barred all recovery.
The problem of runaway juries does not require the application of New York law. New York courts have an adequate mechanism to control any such difficulty — the power of this court and the Appellate Division to set aside a verdict on the ground of excessiveness or to demand a remittitur. Our courts apply a comparative negligence rule in a Federal Employers’ Liability Act case. Also, to avoid confusion, the special verdict procedure may be employed. Thus applying England’s law would have no adverse effect on the administration of our court system. (See Oltarsh v. Ætna Ins. Co., 15 N Y 2d 111, 118-119.) Additionally, the power of our courts to control the size of a jury’s verdict will protect the defendant.
To the extent that the English rule seeks to affect the conduct of persons within its borders, it has a significant interest in the application of its law. Candor, however, requires an acknowledgement that the contributory fault rule has little conduct-regulating function. With regard to the compensating policy of the comparative negligence statute, it may be contended that, since the plaintiff is a New York resident, England might well prefer New York law, which would benefit its domiciliary in this case. But it is difficult to conceive of England having such a parochial viewpoint. 'The statute by its language is not limited to any particular class of plaintiffs. Its enactment was in part brought about by a feeling that the common-law rule was inconsistent with modern notions of justice. The problem is no different from the situation where the courts of this State hold a New York owner responsible for the negligence of a driver operating his car with his consent, even where the injured party is a resident of a foreign jurisdiction (see Tooker v. Lopez, 24 N Y 2d 569, 580); and this is even so where the foreign jurisdiction does not have a statutory counterpart to section 388 of the Vehicle and Traffic Law.
Moreover, all persons injured in England, even if not English residents, may have to be cared for by England. “ Serious injuries may require treatment in [English] homes or hospitals by [English] doctors. The injured may be destitute. They may be compelled to call upon friends, relatives or the public for help. It [England] has manifested its natural interest in *849 the injured by providing remedies for the recovery of damages.” (Watson v. Employers Liab. Corp., 348 U. S. 66, 72, quoted by Fuld, J. in Oltarsh v. Ætna Ins. Co., 15 N Y 2d, at p. 117.)
Summarizing the various considerations, it would appear that England’s interest in the application of its comparative negligence doctrine here is not as strong for example as was Puerto Rico’s interest in having gambling debts incurred in Puerto Rico enforced by New York courts (Intercontinental Hotels Corp. v. Golden, 15 N Y 2d 9). Nor is its interest comparable to Virginia’s interest in Matter of Clark (21 N Y 2d 478) where the issue was whether New York’s or Virginia’s right of election rule should govern. In these two cases the Court of Appeals applied foreign law against a claim that New York has an interest in the application of its law. Still England’s interest is nevertheless greater than New York’s, which certainly has no interest in applying its own law and probably has an interest in seeing England’s rule used as the rule of decision. Perhaps it can be said that this is a situation where no State has a compelling interest in having its law applied in order to vindicate some relevant policy. If that be so, resort to the “ better law” principle might be the honest and simple solution, which would also lead to the adoption of England’s rule as the controlling law here. (Leflar, Choice-Influencing Considerations in Conflict of Laws, 41 N. Y. U. L. Rev. 267; Mitchell v. Craft, 211 So. 2d 509.) In any event, the court concludes that the application of New York law here would not serve any legitimate interest of New York, but would defeat a legitimate interest of England (cf. Intercontinental Planning v. Daystrom, Inc. 24 N Y 2d 372, 385), and therefore England’s comparative negligence rule ought to apply here. To do so does not impose a greater liability on this defendant than it would have in England, and the application of the law of defendant’s own country cannot be the grounds for any complaint.
Finally, we deal with plaintiff’s failure to bring the Law Reform Act to the court’s attention which should normally bar any consideration of the statute’s application at this point. In James v. Powell (19 N Y 2d 249), the Court of Appeals, sua sponte, raised a conflict of law question which neither side had briefed or argued; but James involved the laws of a jurisdiction of the United States, of whose laws our courts are required to take judicial notice (CPLR 4511, subd. [a]). We are here dealing with the law of a foreign country where the court is authorized to take judicial notice but is not required to do so unless the party seeking to have the court invoke foreign law presents the necessary data to the court (CPLR 4511, *850 subd. [b]). On the other hand this court has the power — which the Court of Appeals does not — to order a new trial in the interests of justice (CPLR 4404, subd. [a]), and the court is quite convinced that this is a case where justice requires a new trial. The court elects, therefore, to take judicial notice of England’s Law Reform Act of 1945. In the court’s opinion, to allow the judgment to stand would not conform with the interests of justice. Accordingly, motion for a new trial is granted.

. This action was 'brought in this court in August 1963 against three defendants, one of whom, Hilton Hotels (U. K.) Limited, was the operator of the hotel. A serious question of this court’s jurisdiction over this defendant was raised and ultimately resolved in favor of jurisdiction by the Court of Appeals (19 N Y 2d 533).

. References in this opinion to the defendant are to Hilton Hotels (U. K.) Limited.