Bernard Klieger, J.
These are motions by the defendants Gerald Gottlieb and William Parrinello, to set aside the jury’s verdict against each of them for $1,600 and for judgment dis *350 missing the complaint, on the ground that the jury found plaintiff guilty of contributory negligence.
The action is for damages for personal injuries, against owners of four different automobiles which were involved in a collision on the Brooklyn-Queens Expressway near the Flushing Avenue Exit in New York City on August 15, 1969. The action was discontinued against the defendants Anthony Di Paola and Phyllis Di Paola. The jury decided that the defendant Gerlitz was guilty of no negligence which contributed to the occurrence.
The jury also decided that plaintiff suffered damages in the sum of $4,000.
The defendant Gottlieb was found to have made a 40% contribution to the occurrence, and the jury assessed $1,600 of the damages against him. The defendant Parrinello was also found to have made a 40% contribution, and he too was determined to be responsible to the plaintiff for $1,600. The other 20% of the occurrence was found to have been contributed by the plaintiff, who was thus determined by the jury to bear $800' of his own loss.
The defendants urge that the law to be applied is the rule of contributory negligence which bars recovery to a plaintiff who has made any contribution by way of negligence to his own injury.
The court disagrees.
There is no doubt that prior to the ‘ ‘ epic-making ’ ’ decision of the Court of Appeals in Dole v. Dow Chem. Co. (30 N Y 2d 143 [1972]), a plaintiff who was guilty of any negligence was precluded from recovering damages for his injuries (Yarish v. Dowling, 70 Misc 2d 467, 469). The doctrine of contributory negligence apparently originated in 1809 in England in Butterfield v. Forrester (11 East 60). The defendant in that case had been repairing his home and permitted a pole to project across part of a highway. The plaintiff, who was riding home at dusk, did not ‘see the pole. He rode into it, was thrown from his horse and suffered injuries. Lord Elleitbobottgh spoke for the court and said (p. ¡61): “A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right * * * One person being in fault will not dispense with another’s using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff ”
*351 Its first application in this country is said to have occurred in Smith, v. Smith, (2 Pick. [19 Mass.] 621 [1824]). Since then it has been varititisly characterized as “harsh” (Sun Oil Co. v. Seamon, 349 Mich. 387), “overly harsh” (57 Am. Jur. 2d, Negligence, § 288, p. 685), and “ highly unrealistic ” (Frummer v. Hilton Hotels Int. (60 Misc 2d 840, 847). Yet it was evidently welcomed by courts as a convenient instrument to protect infant industries from the feared excesses of overly sympathetic juries in the burgeoning industrial revolution (Maki v. Frelit, 85 111. App. 2d 439, revd. on other grounds, 40 111. 2d 193; Prosser, Torts [4th ed.], § 65, p. 418).
As Dean Prosser says, ‘ ‘ All this, however, is the antique heritage of an older day. Criticism of the denial of all recovery was not slow in coming, and it has been with us for more than a century” (Prosser, Torts [4th ed.], § 65, p. 418).
At the same time as the courts in this country express increased dissatisfaction with the contributory negligence rule, they seem to look, for a more equitable solution, to the doctrine of comparative negligence which apportions damage among all parties.
The doctrine of comparative negligence is a much older and more widely accepted concept. It goes back to the 17th century in modern English admiralty law, a time when the idea of fault in negligence was being recognized as a basis for liability in the common law. It acquired acceptance in the English Judicature Act of 1873. (36 & 37 Viet., ch. 66.) Because it was claimed that proof was difficult, allocation of liability was divided equally among the ships involved (Turk, Comparative Negligence on the March, 28 Chi.-Kent L. Rev. 189, 304 [1950]; Vincent v. Pabst Brewing Co., 47 Wis. 2d 120, dissent p. 132).
England abandoned the rule which required the equal division of damages in 1911 (Maritime Conventions Act of 1911, 1 & 2 Geo. V, ch. 57, § 1), when it conformed to the Brussels Maritime Convention of 1901-1910, which provides for a division of damages “ in proportion to the degree in which each vessel was at fault.” Nearly all of the important maritime nations in the world except the United States, have adhered to the Brussels Convention (Prosser, Torts [4th ed.], § 67, p. 435).
The usual objections to the comparative negligence rule, that a fair estimate is impossible, and that it places too heavy a burden on the triers of the facts have been considered and rejected as not having been demonstrated by experience (Mole and Wilson, A Study of Comparative Negligence, 17 Cornell L. Q. 333, 339-359).
*352 Difficulty of apportionment of damages was faced squarely by our Court of Appeals in Dole v. Dow Chem. Co. (30 N Y 2d 143, supra) where it determined that a third party would be. required to respond to a prime defendant for the portion of damages the third party caused, irrespective of the fact that the prime defendant was itself at fault. The court said (supra, p. 149): “ To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties.”
While the Court of Appeals in Dole was speaking of apportionment among defendants, it did conclude (supra, p. 153): “ Right to apportionment of liability or to full indemnity, then, as among parties involved together in causing damage by negligence, should rest on relative responsibility and to be determined on the facts.”
In arriving at its conclusion, the Court of Appeals adopted for itself reasons advanced 40 years earlier by Robert A. Leflar, described by the court as “ a distinguished student of tort law ”. Judge Bergan wrote for the majority and stated (supra, p. 151): “ The reasons outlined apply fully to the question of apportionment between Dow and Urban now before the court. * This result [contribution] is admittedly inconsistent with the doctrine of contributory negligence and related rules; it causes the law to settle between litigants disputes arising out of their own misconduct.’ ”
In applying the law to negligence cases, it is the duty of this court to follow the Court of Appeals. This court should render decision as it finds the law to be, and in seeking to ascertain the law, it must determine what higher courts say and what is implicit in their decisions.
The renowned Learned Hand, in Murray v. Roberts (103 F. 2d 889, 894 [C. A. 2d, 1939]), while seeking State law, cited a New York Court of Appeals case in which the only issue was factually different from that before the court. He said: ‘ ‘ But we cannot treat the conclusion as judicial fiat; the premises implicit in the solution are as authoritative as the solution itself. ”
Surrogate Fowler of New York County described the duty of a lower court Matter of Meyer (72 Misc. 566, 572), as follows: “ In so far as possible a court of first instance is bound to give effect to even the implications contained in the decisions of the superior courts of its own jurisdiction.”
A concurring memorandum opinion by Mr. Justice Hopkins in our own Appellate Division, Second Department, in People v. Tomasello (27 A D 2d 562), said of a Court of Appeals decision; *353 ‘ ‘ Though the statements may not have been strictly necessary for the decisions, the force with which they were declared and their importance in the internal logic of the opinions lead me to reluctant concurrence ”
Surrogate, then Mr. Justice Sobel, stated in People v. Persico (45 Misc 2d 421, 422): “But even dicta from the Court of Appeals is entitled to serious consideration. Petitioner is surely justified in relying thereon. ’ ’
The premises implied in the Dole solution, the force of the declarations of the Court of Appeals, and the internal logic of the opinion, lead this court to the conclusion that the doctrine of contributory negligence is inconsistent with the most recent exposition by the Court of Appeals of the law in this State, and it may no longer be applied. '
Other courts of original jurisdiction seem inclined to the same conclusion. Mr. Justice Hammer said in Varish v. Dowling (70 Misc 2d 467, 469, supra) at Special Term, Supreme Court, Queens County: “ It is the opinion of this court that the epic-making Dole decision is the important first step toward the judicial re-evaluation and revision of the hard and fast rule of law which precludes a plaintiff who is guilty of any negligence from recovering damages for his injuries.”
Dole’s reverberations have been noted in the Federal courts, where District Judge Dooling said in Sorrentino v. United States (344 F. Supp. 1308, 1310 (Dist. Ct., E. D. N. Y., 1972): “ One further point appears: the analysis of Dole and Kelly suggests, that a view of contributory negligence which makes it an absolute bar to a plaintiff’s recovery cannot survive. To the plaintiff whose negligence contributes to the accident along with the negligence of the defendant a portion of the responsibility would be assigned, leaving to the defendant responsibility only for so much of the damages inflicted through the concurrent negligence as could fairly be ascribed to the defendant’s separate negligence.”
It is the opinion of this court that the doctrine of cotítributory negligence has not survived the Court of Appeals decision in Dole (30 N Y 2d 143, supra).
The motions are denied.